Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

MAY 2010

Filing Number: 1006013143

004108

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KAREN SANKER | AXA EQUITABLE LIFE INSURANCE COMPANY |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 1832 STRAHLE STREET PHILADELPHIA PA 19152 | 1290 AVENUE OF THE AMERICAS NEW YORK NY 10104 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal |
| | | ☒ Writ of Summons   ☐ Transfer From Other Jurisdictions |

**AMOUNT IN CONTROVERSY**

☐ $50,000.00 or less
☒ More than $50,000.00

**COURT PROGRAMS**

☐ Arbitration
☐ Jury
☒ Non-Jury
☐ Other:

☐ Mass Tort
☐ Savings Action
☐ Petition

☒ Commerce
☐ Minor Court Appeal
☐ Statutory Appeals

☐ Settlement
☐ Minors
☐ W/D/Survival

**CASE TYPE AND CODE**

10 - CONTRACTS OTHER

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

FILED
PRO PROTHY

JUN 01 2010

M. TIERNEY

IS CASE SUBJECT TO
COORDINATION ORDER?
YES     NO

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: KAREN SANKER

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ELLIOT B. PLATT | SUITE 1930 TWO PENN CENTER 1500 KENNEDY BOULEVARD PHILADELPHIA PA 19102 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215)564-5551 | (215)564-1357 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 13309 | ebplatt@att.net |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| ELLIOT PLATT | Tuesday, June 01, 2010, 01:38 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

ELLIOT B. PLATT                                   Attorney for Plaintiff
I.D. No. 13309
Suite 1930, Two Penn Center Plaza
1500 John F. Kennedy Boulevard
Philadelphia, PA. 19102
(215) 564-5551

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

KAREN SANKER                         :
    Plaintiff                        :
                                     :
                                     :        MAy      Term,    2010
    v.                               :
                                     :        No.   4108
AXA EQUITABLE LIFE INSURANCE         :
    COMPANY                          :
    Defendant                        :

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
One Reading Center
Filadelfia, PA 19109
Telephone: (215) 238-1701

ELLIOT B. PLATT
I.D. No. 13309
Suite 1930, Two Penn Center Plaza
1500 John F. Kennedy Boulevard
Philadelphia, PA. 19102
(215) 564-5551

Attorney for Plaintiff

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

KAREN SANKER                  :
     Plaintiff             :
                           :
                           :     MAy      Term, 2010
     v.                    :
                           :     No. 4108
                           :
AXA EQUITABLE LIFE INSURANCE  :
     COMPANY               :
     Defendant

## COMPLAINT
### (Contract 1C)

    1. Plaintiff Karen Sanker is an individual who resides in Philadelphia, Pennsylvania.

    2. Defendant AXA Equitable Life Insurance Company is an insurance company that conducts business and is headquartered in New York, New York.

    3. On June 20, 2007, Defendant issued a term life insurance policy in the amount of $750,000.00, on the life of Howard Nisenfeld, the late father of Plaintiff. A copy of the policy is appended hereto as Exhibit A.

    4. At the time the policy issued, it named Howard Nisenfeld's son, Joshua Nisenfeld, as the sole beneficiary.

    5. On January 8, 2008, Howard Nisenfeld changed the named beneficiary to Plaintiff,

- 1 -

his daughter, as sole beneficiary

6. Howard Nisenfeld died on June 5, 2008. At the time of his death he had paid all premiums that had become due on the policy.

7. Plaintiff has applied to Defendant for payment of the policy amount, and has fulfilled all conditions for receiving payment.

8. On or about April 9, 2009, Defendant notified Plaintiff that it was rescinding the policy, that it was refusing to pay the policy amount, and that it was offering to pay only the premiums it received for the policy.

9. Defendant claims that Howard Nisenfeld made material misrepresentations about his income and assets when he applied for the policy.

10. Howard Nisenfeld made no misrepresentations in his application. If any statements in the application were not fully accurate, they were not material.

11. Although Defendant claims that, under its underwriting guidelines, it would have declined the application from Howard Nisenfeld, it refuses to produce its underwriting guidelines to Plaintiff.

## COUNT I
## Breach of Contract

12. The allegations contained out in Paragraphs 1 through 11 of this Complaint are incorporated herein and re-alleged as if fully set out.

13. The insurance policy issued by Defendant is a contract.

14. By its failure to pay Plaintiff the amount due on the policy, Defendant has breached its contract.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant in the amount of $750,000.00, plus interest and costs of this action.

## COUNT II
### Insurer Bad Faith

15.  The allegations contained in Paragraphs 1 through 14 of this Complaint are incorporated herein and re-alleged as if fully set out.

16. Plaintiff believes and therefore avers that Defendant's existing guidelines did not permit it to deny coverage to Howard Nisenfeld.

17. Defendant did not have a reasonable basis for denying benefits under the policy, and Defendant knew or recklessly disregarded its lack of reasonable basis in denying payment under the policy.

18. Defendant's failure and refusal to pay Plaintiff the amount due under the policy and its refusal to provide Plaintiff with the underwriting guidelines it contends it followed are in bad faith. As a result, Plaintiff is entitled to interest, punitive damages and counsel fees and costs against Defendant pursuant to 42 Pa. C.S. § 8371.

WHEREFORE, Plaintiff prays for judgment in the amount of $750,000.00, plus interest and appropriate punitive damages, plus an award of her counsel fees and the costs of this action.

_____s/ Elliot B. Platt_____
ELLIOT B. PLATT
Attorney for Plaintiff

- 3 -

## VERIFICATION

I am the Plaintiff in the foregoing, and the facts set out therein are true and correct to the best of my knowledge, information and belief.

This Verification is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: May 26, 2010

KAREN SANKER

-4-

**EXHIBIT A**

**AXA EQUITABLE**

| | |
|---|---|
| *INSURED PERSON* | HOWARD NISENFELD |
| *POLICY OWNER* | HOWARD NISENFELD |
| *FACE AMOUNT* | $750,000 |
| *POLICY NUMBER* | J 107 013 014 |

# COPY

## TERM LIFE
## INSURANCE POLICY

### AXA EQUITABLE LIFE INSURANCE COMPANY, A STOCK COMPANY
### 1290 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK

**Agrees**

- To pay the insurance benefits of this policy to the Beneficiary upon receiving proof that the Insured Person died before the Final Term Expiry Date shown on Page 3; and

- To provide *you (the Policy Owner)* with the other rights and benefits of this policy.

These agreements are subject to the provisions of this policy.

**Right to Examine Policy. You may examine this policy and if for any reason you are not satisfied with it, you may cancel it by returning this policy with a written request for cancellation to our Administrative Office or to the agent who sold it by the 10th day after you receive it. If you do this, we will refund the premiums that were paid.**

Read your policy carefully. It is a legal contract between you and AXA Equitable Life Insurance Company.

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

This is a renewable term insurance policy. Coverage is renewable until the Final Term Expiry Date. Premiums are level for the first ten policy years and then generally increase annually in subsequent policy years. All premiums are guaranteed. Premiums are payable to the Final Term Expiry Date or until earlier death. There is a Conversion Privilege as described in the policy. This is a non-participating policy.

147-10PA



## Contents

Insurance Benefits  2
Policy Owner and Beneficiary  4
Premiums  4
Conversion Privilege  5
General Provisions  6

Copies of the application for this policy and any additional benefit riders are attached to this policy.

## In this policy:

"We", "our" and "us" mean AXA Equitable Life Insurance Company.

"You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.

**Administrative Office:**

The address of our Administrative Office is shown on Page 3. You should send correspondence to that office. Premium payments should be sent to the address listed on your billing notice.

## Insurance Benefits

We will pay the insurance benefits of this policy to the Beneficiary when we receive at our Administrative Office proof satisfactory to us that the Insured Person died while this policy was in force.

These insurance benefits include the following amounts, which we will determine as of the date of the Insured Person's death:

* The Face Amount of this policy shown on Page 3;

* *Plus* any other benefits then due from riders to this policy;

* *Plus* or *minus* any adjustments for the last premium as described in the "Premiums" section.

We will add interest to the resulting amount in accordance with applicable law. We will compute the interest at a rate we determine, but not less than the rate required by any applicable law in the state in which this policy is delivered.

We will pay these benefits only if premiums have been paid as required by this policy.

Payment of these benefits may also be affected by other provisions of this policy. See the "General Provisions" section where we specify our right to contest the policy, what happens if age or sex has been misstated, and the suicide exclusion. Additional exclusions or limitations (if any) are listed on Page 3.

COPY

| INSURED PERSON | HOWARD NISENFELD | REGISTER DATE | JUN 20, 2007 |
|---|---|---|---|
| POLICY OWNER | HOWARD NISENFELD | DATE OF ISSUE | JUN 20, 2007 |
| FACE AMOUNT | $750,000 | ISSUE AGE,SEX | 60, MALE |
| | | FINAL CONVERSION DATE | JUN 20, 2015 |
| POLICY NUMBER | J 107 013 014 | FINAL TERM EXPIRY DATE | JUN 20, 2042 |

------------ BENEFITS AND PREMIUMS ------------

| BENEFITS | QUARTERLY PREMIUM | INITIAL LEVEL PREMIUM PERIOD |
|---|---|---|
| LIFE INSURANCE | $956.02 | 10 YEARS |

THE FIRST PREMIUM IS $956.02 AND IS DUE ON OR BEFORE DELIVERY OF THE POLICY. SUBSEQUENT PREMIUMS ARE DUE ON SEP 20, 2007 AND QUARTERLY THEREAFTER. INFORMATION ON PREMIUMS FOR OTHER PAYMENT MODES IS SHOWN ON PAGE 4. THE MODAL FACTORS ARE: SEMI-ANNUAL: .5090 QUARTERLY: .2565 SPECIAL MONTHLY: .0855. MODAL PREMIUMS INCLUDE THE FOLLOWING POLICY FEES: $75.00 FOR EACH ANNUAL PAYMENT, 39.00 FOR EACH SEMI-ANNUAL PAYMENT, 23.00 FOR EACH QUARTERLY PAYMENT, OR 9.00 FOR EACH SPECIAL MONTHLY PAYMENT. OTHER MODES OF FIRST YEAR PREMIUMS ARE AS FOLLOWS: ANNUAL: $3712.50 SEMI-ANNUAL: $1890.49 SPECIAL MONTHLY: $320.01.

------ QUARTERLY RENEWAL PREMIUMS PAYABLE AFTER INITIAL LEVEL PREMIUM PERIOD ----

| RENEWAL DATE JUN 20 | LIFE INSURANCE |
|---|---|
| 2017 | $ 12,773.62 |
| 2018 | 14,022.13 |
| 2019 | 15,661.17 |
| 2020 | 17,390.62 |
| 2021 | 19,210.48 |
| 2022 | 21,195.64 |
| 2023 | 23,325.63 |
| 2024 | 25,887.82 |
| 2025 | 28,929.23 |
| 2026 | 32,522.66 |
| 2027 | 35,867.57 |
| 2028 | 39,867.57 |
| 2029 | 43,315.07 |
| 2030 | 47,651.20 |
| 2031 | 52,337.70 |
| 2032 | 57,237.70 |
| 2033 | 62,660.30 |
| 2034 | 68,042.95 |
| 2035 | 73,467.93 |
| 2036 | 79,906.33 |
| 2037 | 84,741.10 |
| 2038 | 90,762.44 |
| 2039 | 97,268.56 |
| 2040 | 104,532.64 |
| 2041 | 113,774.34 |

N/ET10(NON-TOBACCO USER)

147-10-3

PAGE 3
(CONTINUED ON NEXT PAGE)

(1-1) PPA-RSO
09-12-21  09-12-21  1058

THIS PAGE 3-CONTINUED IS A PART OF POLICY NUMBER   107 0█3 0██   COPY

ADMINISTRATIVE OFFICE:

AXA EQUITABLE LIFE INSURANCE COMPANY
NATIONAL OPERATIONS CENTER
10840 BALLANTYNE COMMONS PARKWAY
CHARLOTTE, NC 28277
(800) 777-6510

N/ET10(NON-TOBACCO USER)
147-10-3

PAGE 3 - CONTINUED

# Policy Owner and Beneficiary COPY

**OWNER.** The Owner of this policy is the Insured Person unless otherwise stated in the application, or later changed. As Owner, you can exercise all the rights in this policy while the Insured Person is living. You do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**BENEFICIARY.** The Beneficiary is as stated in the application, unless later changed. If two or more persons are named, those surviving the Insured Person will share equally unless otherwise stated.

We will pay any benefit for which there is no stated Beneficiary living at the death of the Insured Person to the children of the Insured Person who then survive, in equal shares. If none survive, we will pay the estate of the Insured Person.

**CHANGES.** While the Insured Person is living, you may change the Owner or Beneficiary by submitting written notice in a form satisfactory to us. You can get such a form from your agent or by writing to our Administrative Office. The change will take effect on the date you sign the notice, except that it will not apply to any payment we make or other action we take before we receive the notice in our Administrative Office.

**ASSIGNMENT.** You may assign this policy; however, we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of any assignment. An absolute assignment will be considered as a change of ownership to the assignee.

# Premiums

**AMOUNTS AND DUE DATES.** Page 3 shows the amounts and due dates of the premiums payable until the Final Term Expiry Date. Premiums are level for the first ten policy years. After the first ten policy years, premiums generally increase annually on each policy anniversary. Each premium is payable on or before its due date at our Administrative Office. We will furnish you with a premium receipt, signed by one of our officers, upon request.

You may write and ask us to change the frequency of your premium payment. A premium payment change is subject to our rules in effect at the time of change. If you pay your premium other than annually, the total amount of premiums you pay each year will be more than if you paid the premium annually. Premiums for modes other than annual (semi-annual, quarterly or monthly) are calculated by applying the modal factor shown on Page 3 to the basic annual rate per $1,000 of face amount, times the face amount divided by 1,000 and adding the modal policy fee also shown on page 3.

**GRACE PERIOD.** We allow a grace period of 31 days for payment of each premium, after the first premium. The insurance will continue during the grace period.

**LAPSE.** If a premium is not paid by the end of its grace period, the policy will lapse as of the premium due date. If this occurs, all insurance ends at the end of the grace period.

**PREMIUM REFUND UPON CANCELLATION OF POLICY.** You may cancel this policy by sending a written request for cancellation, in a form acceptable to us, to our Administrative Office. Insurance coverage ends on the date we receive your written request. Upon cancellation of this policy, you are entitled to a refund of premiums for the remainder of the period for which premiums were paid.

**REINSTATEMENT.** You may reinstate this policy within five years after lapse, but not later than the Final Term Expiry Date, if: (1) you provide evidence of insurability for the Insured Person satisfactory to us; and (2) you pay all overdue premiums with interest at 6% per year compounded annually.

**PREMIUM ADJUSTMENT.** We will add to the insurance benefits any part of the last premium paid that applies to a period beyond the policy month in which the Insured Person dies. If the Insured Person dies during the grace period of an unpaid premium, we will deduct from the benefits the overdue premium covering one policy month. These are the adjustments for the last premium referred to on Page 2.

J47-10-4PA

Page 4

## *Conversion Privilege*



You may exchange this policy for a new policy, as defined in The New Policy provision, as applicable, on the life of the Insured Person without evidence of insurability. This exchange is subject to the requirements stated below.

**CONVERSION NOT DURING DISABILITY.** You may exchange this policy provided that (1) the written request for exchange is made on or before the Final Conversion Date shown on page 3; and (2) all premiums for this policy have been duly paid; and (3) if there is a Disability Premium Waiver rider in effect under this policy, the Insured Person is not then totally disabled as defined in that rider (for conversion during disability see provision below).

**The New Policy** - The new policy may be on any plan of life insurance, except for term insurance, that we or an affiliate of ours offer on the date of exchange subject to our or our affiliate's rules then in effect as to plan, age and class of risk.

The new policy will have an insurance amount equal to the amount of insurance in effect on this policy. Or, you may choose any lower amount allowed by our or our affiliate's rules in effect on the date of exchange.

If additional benefit riders are in effect under this policy on the date of exchange, you may choose that the new policy contain similar riders subject to our or our affiliate's rules in effect on the date of exchange.

The Register Date of the new policy will be the date of exchange. The date of exchange is the date we or an affiliate of ours approve your application for exchange accompanied by the first full premium. Premiums and charges for the new policy will be based on our or our affiliate's rates in effect on that date. They will be for the Insured Person's then attained insurance age and for the same class of risk as for this policy, or the closest comparable class. The first premium for the new policy must be paid on or within 31 days before the date of exchange.

Except as to any new additional benefit riders included in the new policy, the suicide exclusion and incontestability periods of the new policy will be determined from the date of issue of this policy instead of from the date of issue of the new policy.

**CONVERSION DURING DISABILITY.** You may exchange this policy if there is a Disability Premium Waiver rider in effect under this policy and the Insured Person is then totally disabled as defined in that rider. You may do this provided that (1) the written request for exchange is made on or before the Final Conversion Date shown on page 3; and (2) all premiums for this policy have been duly paid or are being waived under the terms of that rider. If the request is made on or after the policy anniversary nearest the Insured Person's 65th birthday, the new policy will not be permitted to contain a rider providing disability waiver benefits.

**The New Policy** - The new policy may be on any plan of life insurance, except for term insurance, that we or an affiliate of ours offer on the date of exchange subject to our or our affiliate's rules then in effect as to plan, age and class of risk.

The new policy will have an insurance amount equal to the amount of insurance in effect on this policy. Or, you may choose any lower amount allowed by our or our affiliate's rules in effect on the date of exchange.

COPY

If additional benefit riders are in effect under this policy on the date of exchange, you may choose that the new policy contain similar riders subject to our or our affiliate's rules in effect on the date of exchange. If you exchange this policy before the policy anniversary nearest the Insured Person's 65th birthday and while the Insured Person is totally disabled as defined in a Disability Premium Waiver rider in effect under this policy, we will issue the new policy with a Disability Premium Waiver rider, if available. If that specific rider is not available, we will issue the new policy with another rider that provides disability waiver benefits, if available. Waiver benefits under the new policy due to total disability of the Insured Person will be provided according to the terms of the rider issued.

However, if premiums have been waived for at least the five preceding policy years under the terms of a Disability Premium Waiver rider in effect under this policy we will automatically issue a new policy with a Disability Premium Waiver rider in exchange for this policy on the policy anniversary nearest the Insured Person's 65th birthday. We will do this whether or not you elected such exchange and whether or not the conversion period described above has expired. The new policy issued in this case will have an insurance amount equal to the amount of insurance under this policy. The new policy will be on any plan of life insurance, except for term or variable life insurance, that we or an affiliate of ours then issue, subject to our or our affiliate's rules in effect on its Register Date. Any other additional benefit riders in effect under this policy will also be issued with the new policy, if then available.

The Register Date of the new policy will be the date of exchange. The date of exchange is the date we or an affiliate of ours approve your application for exchange. Premiums for the new policy will be based on our or our affiliate's rates in effect on that date. Premiums will be for the Insured Person's then attained insurance age and for the same class of risk as for this policy, or the closest comparable class.

The suicide exclusion and incontestability periods of the new policy will be determined from the date of issue of this policy instead of from the date of issue of the new policy.

We will waive premiums for the new policy as stated in its Disability Premium Waiver rider while total disability continues. We will not waive premiums on and after the policy anniversary nearest the Insured Person's 65th birthday for a total disability that began on or after the policy anniversary of this policy nearest the Insured Person's 60th birthday.

## *General Provisions*

**THE CONTRACT.** We provide this insurance in consideration of payment of the required premiums. This policy, any riders or endorsements, and the attached copy of the application for it make up the entire contract.

Only our Chairman of the Board, our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

**INCONTESTABILITY.** We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the Insured Person for two years, except for nonpayment of premiums, from the earlier of the Register Date or date of issue shown on Page 3.

We also have the right to contest the validity of any policy change or reinstatement based on material misstatements made in any application for that change or reinstatement. We will not contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during the lifetime of the Insured Person.

No statement shall be used to contest a claim unless contained in an application.

All statements made in the application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

147-10-6PA                                                                                      Page 6

**AGE AND SEX.** If the Insured Person's age or sex has been misstated, any benefits will be those that the premium paid would have purchased at the correct age and sex.

**SUICIDE EXCLUSION.** If the Insured Person commits suicide, while sane or insane, within two years after the earlier of the Register Date or Date of Issue shown on Page 3, our liability will be limited to the payment of a single sum equal to the premiums paid.

**POLICY PERIODS AND ANNIVERSARIES.** Policy years, policy months, policy anniversaries and premium periods are measured from the Register Date. Each policy month begins on the same day in each calendar month as the Register Date.

**POLICY CHANGES.** You may add additional benefit riders or make other changes, subject to our approval and rules at the time of change.

**CHANGE FROM TOBACCO USER PREMIUMS TO NON-TOBACCO USER PREMIUMS.** Any Insured Person being charged tobacco user premiums may be eligible for tobacco user premiums. The change, if approved, may result in lower future premiums beginning on the effective date of change to non-tobacco user premiums.

Upon request made to our Administrative Office, we will provide forms and instructions as to how you may apply for non-tobacco user premiums. The change will be based upon our general underwriting rules in effect at the time of application, and may include criteria other than tobacco user status as well as a definition of tobacco use different from that applicable at the time this policy was issued. A non-tobacco user is an insured person who tests negative for nicotine use and meets our regular underwriting rules.

The change to non-tobacco user premiums, if approved, will be effective on the next premium due date that coincides with or next follows the date we approve your request. A copy of your application for the change will be attached to the new Policy Information section that we will issue when the change is made. The new section and the application for change will become part of this policy. We may require you to return this policy to our Administrative Office to make the change.

The change to non-tobacco user premiums will be contestable; however, we will not contest the change after it has been in effect for two years during the lifetime of the Insured Person. In the event of a successful contest, the death benefit and any benefits provided by riders to this policy shall be those which would be purchased by the most recent premium, and the cost of any benefits provided by riders at tobacco user premiums.

**HOW BENEFITS ARE PAID.** The Insurance Benefits are paid immediately in one sum. Amounts paid will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

## *ENDORSEMENT*

*In this endorse~~nt "we", "our" and "us" mean AXA Equitab. Life Insurance Company. "You" and "your" mean the owner of the policy at the time an owner's right is exercised.*



This endorsement is made part of the attached policy as of its Issue Date and is effective as of the Register Date. It should be attached to and kept with your policy. This endorsement modifies your policy as follows:

We will apply a conversion credit when you convert your policy. The amount of the conversion credit is the lesser of (1) the premium paid for the policy during the first policy year exclusive of temporary flat extra charges and premiums for optional benefits; (2) the amount of the first year's premium for the policy calculated on an annual modal basis (which reflects discounts, if applicable, shown on page 3) exclusive of temporary flat extra charges and premiums for optional benefits; and (3) the initial modal premium for the new policy. The conversion credit, if applicable, may only be applied to reduce the initial modal premium for the new policy.

If you convert less than the full face amount of the policy, the conversion credit will be pro-rated based on the proportion that the face amount being converted bears to the face amount of the policy.

The conversion credit will not apply if premiums or charges for the new policy are being waived under the terms of a rider providing disability waiver benefits.

### *AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

S.06-40

# *Limited Life Expectancy*
# *Accelerated Death Benefit Rider*

**Disclosure.** The receipt of the Accelerated Death Benefit Amount may be taxable. You should seek assistance from your personal tax advisor prior to electing the benefit.

*In this rider "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.*

---

### THE CASH VALUE/ACCUMULATION VALUE, IF ANY, AND DEATH BENEFIT WILL BE REDUCED IF AN ACCELERATED DEATH BENEFIT IS PAID.

**Effective Date of this Rider.** This rider is effective on the Register Date of this policy. If this rider is added after issue of this policy, the effective date of this rider is shown on the Additional Benefits Rider to which it is attached.

**Cost Of This Rider.** There is no premium or cost of insurance charge for this rider.

**This Rider's Benefit.** We will pay an Accelerated Death Benefit in the amount requested by the owner, if the insured person is diagnosed with a medically determinable condition causing a limited life expectancy of twelve months or less, subject to the provisions of this rider. We will pay an Accelerated Death Benefit under this policy only once and in one lump sum. A statement of account will accompany the Accelerated Death Benefit payment.

The maximum Accelerated Death Benefit payment you may receive is the lesser of:

1. 75% of the difference between (a) the death benefit payable under this policy and (b) any outstanding policy loan and accrued loan interest, and
2. $500,000.

The maximum aggregate amount of Accelerated Death Benefit payments that will be paid under all policies issued by us or our affiliated companies on the life of the insured person is $500,000.

For purposes of this benefit, the death benefit does not include any accidental death benefits, term rider death benefits, or any benefits payable upon the death of any person other than the insured person under the base policy.

We reserve the right to deduct a processing charge of up to $250.00 per policy from the Accelerated Death Benefit payment.

We reserve the right to set a minimum of $5,000 on the amount you may receive under this rider.

To be eligible for this benefit you must provide satisfactory evidence to us that the insured person's life expectancy is twelve months or less. This evidence must include, but is not limited to, certification by a physician licensed to practice medicine in the United States or Canada and who is acting within the scope of such license. A physician does not include the owner or the insured person.

**How This Rider Relates To The Policy.** This rider is a part of the policy. Its benefits are subject to all terms of this rider and the policy. This rider has no cash or loan value. This rider is non-participating.

**Interest.** Interest will be charged on the amount of the Accelerated Death Benefit and on any unpaid premium we advance after an Accelerated Death Benefit payment. The interest rate will be determined on the date of the application for an Accelerated Death Benefit Payment and will not exceed the greater of the following on such date:

1. the yield on a 90-day treasury bill; and
2. the maximum adjustable policy loan interest rate permitted in the state in which this policy is delivered, or the "Published Monthly Average", as defined below, for policies without cash values.

The "Published Monthly Average" means the Moody's Corporate Bond Yield Average - Monthly Average Corporates published by Moody's Investors Service, Inc., or any successor thereto. If such averages are no longer published, we will use such other averages as may be established by regulation by the insurance supervisory official of the jurisdiction in which this policy is delivered.

The interest rate accrued on the portion of the lien secured against the policy's net cash surrender value, if any, at the time of the benefit acceleration shall be no more than the policy loan interest rate.

**Effect Of Accelerated Death Benefit Payment On The Policy.** The Accelerated Death Benefit payment, plus any accrued interest, will be treated as a lien against the policy values. The amount of the lien will be pro-rated against the policy's net cash surrender value, if any, and the net amount at risk. If your policy is a variable or universal life policy, the net amount at risk is the death benefit minus the policy account, if any. If your policy is a term or whole life policy, the net amount at risk is the death benefit minus the cash surrender value, if any. The portion of the lien allocated to the net cash surrender value is the result of (1) times (2) where: (1) is the ratio of the total lien to the death benefit less any policy loan and accrued loan interest, and (2) is the net cash surrender value; as such, the remaining amount is allocated to the policy net amount at risk.

R06-70PA

Additionally, if your policy is a variable life policy, the portion of the cash surrender value that is on lien and is allocated to investment funds of the Separate Account (SA) will be transferred to and maintained as part of the unloaned portion of the Guaranteed Interest Account (GIA). You may tell us how much of the accelerated payment is to be transferred from each investment fund. Units will be redeemed from each investment fund sufficient to cover the amount that is on lien and transferred to the unloaned portion of the GIA. If you do not tell us how to allocate the payment, we will allocate it based on our rules then in effect.

However, if your variable policy does not have a GIA, the portion of the cash surrender value that is on lien will be transferred to and maintained in the Money Market Fund of our SA. Such transfers will occur as of the date we approve an Accelerated Death Benefit payment; there will be no charge for such transfers. The amount payable at death under the policy will be reduced by the full amount of the lien and any other indebtedness outstanding under the policy. Your access to the policy's cash surrender value will be limited to the excess of the policy's cash surrender value over the amount of the lien secured against the cash surrender value and any other outstanding policy loans and accrued loan interest.

**Effect Of Accelerated Death Benefit Payment On Policy Premiums.** If your policy is a term, whole life or any other fixed premium policy, premiums will be required to be paid after an Accelerated Death Benefit payment. If any premium is not paid when due, we will advance the amount of the unpaid premium and add it to the lien.

If your policy is a flexible premium variable or universal life policy, and after an Accelerated Death Benefit payment the policy at the beginning of a policy month is in default, we will advance a premium sufficient to keep the policy in force and add it to the lien.

However, if a Disability Premium Waiver Rider or a Disability Waiver of Monthly Deductions Rider is in effect under the policy, this policy's premium or monthly deductions will be waived as of the date we approve an Accelerated Death Benefit payment.

**Claims and Conditions.** Your right to an Accelerated Death Benefit payment is subject to the following conditions:

1. The policy must not be in the grace period.
2. At any time after the insured person is diagnosed with a medically determinable condition causing a limited life expectancy of twelve months or less, you must submit a claim in writing to our Administrative Office in a form satisfactory to us.
3. Prior to the Accelerated Death Benefit payment, we will require from any assignee or irrevocable beneficiary a signed acknowledgment of agreement for such payment.
4. For joint last-to-die policies, a claim may be made under the rider only after the death of the first of the insured persons.
5. You may not be eligible for the Accelerated Death Benefit payment if we are notified that:
   a) you are required by law to elect this rider's benefit in order to meet the claims of creditors, whether in bankruptcy or otherwise; or
   b) you are required by a government agency to elect this rider's benefit in order to apply for, obtain, or keep a government benefit or entitlement.
6. You may be limited to only one Accelerated Death Benefit payment per policy.
7. We may require examination of the insured person by our medical representatives at our expense as part of any proof to establish eligibility for benefits under this rider.

**When This Rider Terminates.** Prior to any Accelerated Death Benefit payment you may terminate this rider by providing written notice in a form satisfactory to us and returning the rider to our Administrative Office. The effective date of termination will be the date your request is received at our Administrative Office. Once this rider has been terminated, it cannot be re-attached to the policy.

This rider will terminate when the policy's extended term non-forfeiture option, if any, takes effect.

This rider will terminate when the policy terminates. If at any time the amount of the lien equals the total death benefit, the policy will terminate. Termination will occur 31 days after we have mailed notice to the last known address of the owner, unless the full amount of the lien is repaid within 31 days of the notice.

*AXA EQUITABLE LIFE INSURANCE COMPANY*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

R06-70PA

# AMENDMENT TO APPLICATION COPY

Name of Proposed
Insured:              HOWARD NISENFELD          Application Dated: May 21, 2007
                      First  Middle Initial  Last

Policy or Contract No.: J 107 013 014   PPA

## TO AXA EQUITABLE LIFE INSURANCE COMPANY

Your application is hereby amended by the undersigned in the following particulars:

MY ASSOCIATE HAS PROVIDED A PROPOSAL ILLUSTRATING THE VALUES OF THE
CONTRACT AS ISSUED.

ISSUE WITH STANDARD PREMIUM CLASS POLICY.

This amendment is to be taken as a part of said application, subject to the agreement therein contained; said application and this
amendment then taken as a whole are to be considered as the basis for and as a part of the policy or contract.  To the best of my (our)
knowledge and belief, in all other respects the statements and answers in the application continue to be, without material change, true and
complete as of the date of this amendment.

Dated at  Forestville   PA                    on    6/27  20  07
             (City)        (State)

Signature of Purchaser if other than Applicant        Signature of Applicant:

AGENT:  GROSS-ASU: PPA

AGENCY:

EV 237-204 [ 180-2375 /app. Amendment

Received 01/05/2008 11:09AM In 00:50 on line [2] for CUSTOMER SERVICE
01/08/2008   11:02    213555367G                    GROSSFINANCIAL                    PAGE   01/02
01/02/2009   14:11    2155553676                     GROSSFINANCIAL                    PAGE   01/02

Please complete the sections listed below if you are requesting a:

[X] Beneficiary change — sections 1, 2, 3
For general information regarding requirements for a change of Beneficiary, please see last page of form.

**Policy/Owner Information**   (Please Print)

J107 018 014
Policy Number(s) (Required)

NUSENFELD   HOWARD
Insured's Name (Last, First, Middle Initial) (if other than Insured) or Name of Entity if Corporation, Partnership or Trust Owned

267-612-6274
Owner's Daytime Telephone Number

Owner's Name (Last, First, Middle Initial) (if applicable)

7116 RUTLAND ST
Owner's Address

PHILA
City                                    State          19149
                                                       Zip Code

**Designation of New Beneficiary(ies)** | Completing the Form

- This form may be used for more than one policy, provided all policies insure the same person, have the same Owner, and the same Beneficiary designation.
- For request to be accepted, all alterations must be initialed and dated by the policy Owner(s).
- The legal residence and mailing address of all proposed Beneficiaries are required.
- If the proposed Beneficiary is a Trust, the date of the Trust Agreement, name and address of Trustee, and Tax Identification Number must be enclosed.
- For a Beneficiary change on a Joint Life policy, a family-type policy, or a policy that includes a Family Plan Insurance provision, Renewable Term Insurance rider on an Additional Insured, or Level-term Term Insurance rider, whereby multiple Insured's are covered under a single policy, it is necessary to identify the Insured to whom the change applies as individual Beneficiary designations are permitted for each Insured person.
- Before completing this request, please read the Beneficiary provisions in the General Information section at the back of this form.
- Do not return the policy with this request.

**PRIMARY BENEFICIARY(IES):**
List name of new Primary Beneficiary(ies) and relationship to the Insured/Annuitant, address, Taxpayer Identification Number, and daytime phone number (please print):

KAREN   N.   SHASKEL   DAUGHTER   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
First         Middle        Last       Relationship   Taxpayer Identification Number

1832 STRAHLE STREET   PHILADELPHIA   PA   19152
Address Number and Street        City            State   Zip Code

215-722-3068
Designation/Additional Information

continued on next page

Received 01/03/2008 1..09AM in 00:50 on line [2] for CUSTOMER_SERVICE
01/08/2008  11:02   2153653676                    GROSSFINANCIAL
01/02/2008  14:11   2103053676                    GROSSFINANCIAL

COPY

(Attach an additional completed item if more Beneficiaries are requested than this section allows)

| First | Middle | Last | Relationship | Taxpayer Identification Number |
|---|---|---|---|---|

Address Number and Street                City          State        Zip Code

Designation/Additional Information

OR

Organization, Trust/Trustee, or Other                Relationship Type    Taxpayer Identification Number

Address Number and Street                City          State        Zip Code

Designation/Additional Information

**CONTINGENT BENEFICIARY(IES):**
Provide name of new Contingent Beneficiary(ies), relationship to the Insured/Annuitant, address, Taxpayer Identification Number, and daytime telephone number (please print)

| First | Middle | Last | Relationship | Taxpayer Identification Number |
|---|---|---|---|---|

Address Number and Street                City          State        Zip Code

Designation/Additional Information

| First | Middle | Last | Relationship | Taxpayer Identification Number |
|---|---|---|---|---|

Address Number and Street                City          State        Zip Code

Designation/Additional Information

OR

Organization, Trust/Trustee, or Other                Relationship Type    Taxpayer Identification Number

Address Number and Street                City          State        Zip Code

Designation/Additional Information

Are any of the named Beneficiaries above the Viatical or Life Settlement Company?  ☐ Yes  ☐ No

X _____ (Title, if applicable)         1/8/08
Signature of Contract Owner                                     Date (mm/dd/yy)

X _____ (Title, if applicable)         _____
Signature of Joint Owner or Collateral Assignee (Title, if applicable)   Date (mm/dd/yy)
(Refer to General Information on Signature and Supplemental Document Requirement section at end of form.)

For Internal Use Only:
AXA Equitable/AXA Life and Annuity/MONY Life Insurance Company of America certifies that this change has been recorded.

Date: _____   By: _____

☐ AXA Equitable Life Insurance Company
1290 Avenue of the Americas
New York, NY 10104

☐ MONY Life Insurance Company of America
1290 Avenue of the Americas
New York, NY 10104

**Application For Life Insurance**
Part I
Form No. LIFEAPP-PA
(2005)

COPY

**① PROPOSED INSURED** (Print Name as it is to appear on the policy.) Please print in ink.

Proposed Insured

A. Full Name: First **HOWARD** M.I. ___ Last **NISENFELD** B. Gender: ☒ Male ☐ Female

C. Home Address: **7216 RUTLAND ST.** No. and Street
(If address is a P.O. Box or not current residence, proof of residence required)

City/Municipality **PHILA** County/Parish **PHILA** State **PA** Zip +4 Code **19149**

D. Home Phone No. **215-342-6834** Best time to call: **9AM** Best phone no. to be contacted: **215-342-6834**

E. Date of Birth: **4-8-47** (Month/Day/Year) F. Place of Birth: **Phila PA** (State/Country)

G. Marital Status: ☐ Single ☐ Married ☒ Widowed ☐ Divorced ☐ Separated H. Soc. Sec. No. **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**

I. Driver's Lic. No.: **13 733490** State: **PA**

J. U.S. Citizen? ☒ Yes ☐ No* If No, Country ___ U.S. Visa type ___ Passport # or U.S. Visa # ___ # of years in U.S. ___

K. Currently employed? ☒ Yes ☐ No ☐ Retired

L. Current Occupation: (1) Title: **OWNER** (2) Duties **Run collection agency** (3) How Long? **4 yrs**
(If less than 1 year at current occupation, give previous in Remarks.)

M. Employer Name: **HN Collections**

N. Employer Address: **55 Buck Rd** No. & Street **Huntingdon Valley** City **PA** **19006** Zip +4 Code

O. Annual Earned Income (income from occupation) $ **75,000** P. Net Worth $ **1,208,000**

If the Proposed Insured and/or policy owner is not a U.S. Person (U.S. Citizen or U.S. Corporation, Partnership, or Trust established or organized under the laws of a state of the United States) then he, she or it may have to provide additional documentation, including IRS form W-8 BEN.

**② COVERAGE INFORMATION**

A. Plan of Insurance **Equitable Term 10** Amount of Insurance $ **750,000**
(If survivorship policy, complete an application for each Proposed Insured.
If VUL, must also complete VUL Supplement.
To select dividend options on EWL or Riders on all Non-VUL Plans complete Optional Benefits Supplement.)
(If face amount is $2 million or larger complete Financial Supplement.)

B. Complete for UL or VUL only (1) Death Benefit Option ☐ Option A ☐ Option B

(2) Planned Periodic Premium $ ___

C. Definition of Life Insurance Test: Complete for AUL II, II, IL COLI '04 ☐ Guideline Premium Test ☐ Cash Value Accumulation Test

D. Premium Mode: ☐ Annual ☐ Semi-Annual ☒ Quarterly ☐ Monthly
Or
System-Matic (Complete S-M form and check applicable box) ☐ Quarterly (only available for UL and VUL) ☐ Monthly

E. Salary Allotment (1) Unit Name ___ (2) Unit/Sub Unit No. ___ (3) Unit Register Date ___
(Specify Allstar name, if other than Insured, in Remarks.)

F. Date Policy to save insured Age? ☐ Yes ☒ No

G. 1. Do you, the owner, intend to use or transfer the policy for any type of pre-death financial settlement, (such as viatical settlement, senior settlement, life settlement, or for any other secondary market? ☐ Yes ☒ No
   2. Have you, the owner, or any Proposed Insured (other than the owner, in the past 5 years sold a policy to a life settlement, viatical, or other secondary market provider? ☐ Yes ☒ No

H. Any other life insurance now in effect or application now pending? ☒ Yes ☐ No **Prudential 500,000 L 4144953 C**
(Give companies, amounts and policy numbers in Remarks.)

I. Will the coverage applied for replace or change any life insurance or annuities? ☐ Yes ☒ No Is this a 1035 Exchange? ☐ Yes ☒ No
If "Yes", complete: (If additional room is needed, please use Remarks Section.)

Amount $ ___ Company ___ Issue Year ___ Policy Number ___ ☐ Life ☐ Group ☐ Annuity

Amount $ ___ Company ___ Issue Year ___ Policy Number ___ ☐ Life ☐ Group ☐ Annuity

J. Is this a Term Policy/Rider Conversion or Purchase Option? ☐ Yes ☒ No If "Yes", complete Term Policy/Rider or Purchase Option Supplement.

K. Complete if Proposed Insured is under age 15: a) State total amount of insurance in force on the life of applicant or child's parent, if greater $ ___
b) Are any other children in the family insured for a lesser amount? ☐ Yes ☐ No

If "Yes" give details ___

FGV-2005 PA                     CAT# 132854                     E6173_13  1

**10462032,05-09-2007,14:29:19**

**③ BENEFICIARY/OWNER** — COPY

A. Beneficiary (Total designation must be 100%. Use Remarks section for additional Beneficiary information.)
Beneficiary Full Name Primary: _JOSHUA WISENFELD_   Relationship to Insured _Son_   Percentage _100_

Contingent: _____

B. Owner (The Owner of this policy is the Insured unless otherwise specified below. Enter name of successor owner in Remarks.)
Provide the Applicant's name, address and Taxpayer ID, if different from the insured and Owner, in Remarks Section.
If the Owner is the Trust provide the name of the Trust.
Owner's Name: _____   Social Security # or TIN _____
Address: Street _____  City _____  State _____  Zip Code _____
U.S. Citizen? ☐ Yes ☐ No* If No, Country _____  U.S. Visa type _____  Passport # or U.S. Visa # _____  # of years in U.S. _____
Relationship to Insured _____  Date of Birth _____
Name of Trustee _____  Date of Trust Agreement _____
If the policy owner is not a U.S. Person (U.S. Citizen or U.S. Corporation, Partnership, or Trust established or organized under the laws of a state of the United States) then he, she or it may have to provide additional documentation, including IRS form W-8 BEN.

**④ GENERAL INFORMATION (Proposed Insured)**
List details of all answers in the Remarks section.

| | | |
|---|---|---|
| A. Ever had a driver's license suspended or revoked, or within the last 5 years, been convicted of reckless or negligent driving or driving under the influence of alcohol or drugs? (If "Yes", include dates, types of violations, and reason for suspension or revocation in Remarks.) | ☐ Yes | ☑ No |
| B. Any plans to travel or reside outside the United States? (If "Yes", complete Foreign Residence and Travel Supplement.) | ☐ Yes | ☑ No |
| C. Have you been disabled for 2 or more weeks within the last 2 years? | ☐ Yes | ☑ No |
| D. In the last year flown other than as a passenger or plan to do so? (If "Yes", complete Aviation Supplement.) | ☐ Yes | ☑ No |
| E. Engaged within the last year or any plan to engage in motor racing on land or water, underwater diving, skydiving, ballooning, hang gliding, parachuting or flying ultra-light aircraft or other hazardous sports or hobbies? (If "Yes", complete Avocation Supplement.) | ☐ Yes | ☑ No |
| F. Ever had an application for life or health insurance that was declined, required an extra premium or other modification? (If "Yes", state procedures and provide full details in Remarks.) | ☐ Yes | ☑ No |
| G. In the last 10 years, have you been convicted of, or pled "no contest" to a felony? (If "Yes" in "Remarks", state full details of offense and penalty, with dates.) | ☐ Yes | ☑ No |
| H. Do you currently use any form of tobacco or nicotine product? ☐ Yes ☑ No  Type ___ Avg. Quantity # packs ___ Frequency ___ | | |
| I. Have you ever used any form of tobacco or nicotine product? ☐ Yes ☑ No  Type ___ Date Ceased ___ | | |

**⑤ MEDICAL INFORMATION (Proposed Insured)** Please Note: Complete this section even if a paramedical or medical exam is being ordered.

A. Height _6_ Ft. _2_ In.; Weight _210_
B. Personal Physician Name _Dr Mack Nemez_
C. Address _7051 Kindling Blvd, PA 19114_
D. Date and Reason for Last Visit in the Last 5 Years _10/06 — complete exam — all ok_
E. What treatment was given or recommended? (If none, so state) _All good_

Has Proposed Insured:

| | | |
|---|---|---|
| F. Ever had or been treated for heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor, cancer, respiratory or neurological disorder? | ☐ Yes | ☑ No |
| G. In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Also include medical checkups in the last 2 years. Do not include colds, minor injuries or normal pregnancy.) | ☐ Yes | ☑ No |
| H. In the last 10 years: | | |
| 1. Used, except as legally prescribed by a physician, tranquilizers, barbiturates or other sedatives; marijuana, cocaine, hallucinogens or other mood altering drugs; heroin, methadone or other narcotics; amphetamines or other stimulants; or any other illegal or controlled substances? (If "Yes", complete Substance Usage Supplement.) | ☐ Yes | ☑ No |
| 2. Received counseling or treatment regarding the use of alcohol or drugs including attendance at meetings or membership in any self-help group or program such as Alcoholics Anonymous or Narcotics Anonymous? (If "Yes", complete Substance Usage Supplement.) | ☐ Yes | ☑ No |
| I. In the last 10 years, been: Diagnosed with, or treated for, Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC) by a member of the medical profession? | ☐ Yes | ☑ No |

| Family History | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | | Heart | 84 |
| Mother | | Lung | 81 |
| Sibling | 9 (Brothers & Sisters) — all living | | |

**C** DETAILS OF ALL "YES" ANSWERS FOR MEDICAL INFORMATION    (Attach additional sheet of paper if necessary; and it must be signed and dated by the Proposed Insured, Owner, and financial professional.)

| Question No. | Illness, Treatment, and Number of Attacks (include specific diagnosis and medication) | Onset Date | Recovery Date | If disabled, How long? | Doctor, Clinic, or Hospital Complete Address, and Phone Number |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**REMARKS**
Provide details for any of the questions, and any other additional remarks. If the owner is a Qualified Plan, please indicate the qualified plan and type here.    (Attach additional sheet of paper if necessary; and it must be signed and dated by the Proposed Insured, Owner, and financial professional.)

**D** COMPLETE IF MONEY IS PAID WITH THE POLICY:

Amount paid with this Application: $ 0

Has the undersigned read, signed and received a copy of the Temporary Insurance Agreement, and do they agree to the conditions of the Temporary Insurance Agreement, including:

(i)   the requirement that all of the conditions in that Agreement must be met before any temporary insurance takes effect, and

(ii)  the $1,000,000 insurance amount limitations; and

(iii) that the Person Proposed for Insurance is at least 15 days of age and not older than 75 years of age?    ☐ Yes  ☐ No

If "No," or if any Person Proposed for Insurance has been diagnosed or treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC) by a member of the medical profession within the last 10 years or had cancer, a stroke, or a heart attack within the last year, a premium may not be paid before the policy is delivered.

**AGREEMENT.** Each signer of this application agrees that:

(1) The statements and answers in all parts of this application are true and complete. We (the Company checked on page 1 of this application) may rely on them in acting on this application.

(2) The Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect if money is paid before the policy is delivered. Temporary Insurance is not provided for a policy or benefit applied for under the terms of a guaranteed insurability option or a conversion privilege.

(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application (a) until a policy is delivered and the full initial premium for it is paid while the person(s) proposed for insurance is (are) living; (b) before any Registered Date specified in this application; and (c) unless to the best of my (our) knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time the full initial premium is paid.

(4) No financial professional or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement. Or to waive any of our rights or requirements. We shall not be bound by any information unless it is stated in Application Part 1 or Part 2 (Paramedical or Medical exam).

(5) I acknowledge receipt of the Living Benefits Brochure (Accelerated Death Benefit Rider Brochure), where applicable.

AMIGV-3005 PA

10462032, 05-09-2007, 14:29:19

3

☐ AXA Equitable Life Insurance Company          ☐ MONY Life Insurance Company of America.

**ACKNOWLEDGEMENT OF UNDERWRITING PRACTICES**
I (we) acknowledge that I (we) have received a statement of the Underwriting Practices of the Company (ies) which describes from whom and why the Company (ies) obtains information on my (our) insurability, to whom such information may be reported and how I (we) may obtain it. The statement contains the notice required by the Fair Credit Reporting Act.

**AUTHORIZATIONS**

**TO OBTAIN HEALTH INFORMATION**
I (we) authorize any physician, hospital, clinic, medical practitioner, medical testing laboratory, pharmacy or other health care provider, health plan or insurance company (including our Company, with respect to other coverage), or any prescription drug or pharmacy benefit manager or administrator, and the Medical Information Bureau to disclose to the Company (ies) and its authorized representatives any and all information, whether fact or opinion, they may have about any diagnosis, treatment, prognosis, genetic test records, findings and/or results regarding my (our) past, present or future physical or mental condition.

**TO OBTAIN NON-HEALTH INFORMATION**
I (we) authorize any employer, business associate, government unit, financial institution, consumer reporting agency, the Medical Information Bureau, my (our) insurance agency and my (our) financial professional to disclose to the Company (ies) and its authorized representatives any information they may have about my (our) occupation, avocations, finance, driving record, character and general reputation. I (we) authorize the Company (ies) to obtain investigative consumer reports, as appropriate.

**PURPOSE OF AUTHORIZATIONS**
I (we) understand that the information obtained will be used by the Company (ies) to determine my (our) eligibility for life insurance coverage and such other uses specified in accordance with the Underwriting Practices attached to this application. In addition, information may be disclosed to the Medical Information Bureau (MIB) who, upon request, may disclose such information about you in its file to another member company with whom you apply for life or health insurance or to whom a claim for benefits may be submitted; when requested by a government agency; in connection with a legal or arbitration proceeding; or for other purposes as required or permitted by applicable law. If a policy is issued to me (us), this information may also be used in the furtherance of my (our) policy and process claims made under the policy.

**COVERAGE CONDITIONS**
I (we) understand that the Company (ies) is conditioning the issuance of coverage on the provision of this authorization, and that, while I (we) may refuse to sign this authorization, my (our) refusal to do so could result in coverage not being issued.

**ADDITIONAL AUTHORIZATIONS**
You have advised me (us) that the Company (ies) may request additional authorizations in order to obtain the information the Company (ies) needs to complete its review of my (our) application and, if the policy is issued, in connection with any claim asserted under the policy. I (we) understand that I (we) am (are) not obligated to provide these additional authorizations but that, if I (we) choose not to provide them, this application and any claim made under the policy, if issued, may be rejected.

**DURATION**
Unless otherwise revoked, I (we) agree that this authorization will expire on the earlier of the date that the Company (ies) declines my application for coverage or, if a policy is issued, 24 months from the date of any (our) application. I (we) understand that I (we) may revoke my (our) authorizations at any time, except to the extent that the Company (ies) has taken action in reliance on this authorization, this application and any claim made under the policy, if issued, may be rejected. My (our) revocation must be submitted in writing to: Chief Underwriter of the Company checked above and on the front page of this application, 1290 Avenue of the Americas, New York, New York 10104.

**COPY OF AUTHORIZATIONS**
I (we) have a right to ask for and receive free copies of this Acknowledgement and Authorization Form and all other authorizations signed by me (us). I (we) agree that reproduced copies will be as valid as the original.

FOR THE APPLICANT'S PROTECTION, THE LAWS OF CERTAIN STATES REQUIRE THIS NOTICE: ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

SOCIAL SECURITY OR TAX I.D. NUMBER CERTIFICATION—UNDER THE PENALTIES OF PERJURY, I CERTIFY THAT (i) THE NUMBER SHOWING ON THIS FORM IS MY CORRECT TAXPAYER IDENTIFICATION NUMBER, AND (ii) I AM NOT SUBJECT TO BACKUP WITHHOLDING BECAUSE (A) I AM EXEMPT FROM BACKUP WITHHOLDING OR (B) I HAVE NOT BEEN NOTIFIED BY THE INTERNAL REVENUE SERVICE (IRS) THAT I AM SUBJECT TO BACKUP WITHHOLDING AS A RESULT OF A FAILURE TO REPORT ALL INTEREST OR DIVIDENDS OR (C) THE IRS HAS NOTIFIED ME THAT I AM NO LONGER SUBJECT TO BACKUP WITHHOLDING, AND (iii) I AM A U.S. PERSON (INCLUDING A U.S. RESIDENT ALIEN).
CERTIFICATION INSTRUCTIONS: You must cross-out item (ii) above if you have been notified by the Internal Revenue Service that you are currently subject to backup withholding because you have failed to report all interest or dividends on your tax return.
THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISIONS OF THIS DOCUMENT OTHER THAN THE CERTIFICATION REQUIRED TO AVOID BACKUP WITHHOLDING.

I (we), the undersigned, by my (our) signature(s) below understand that I (we) am (are) agreeing to all the terms and conditions of this application, including but not limited to, this Acknowledgement and Authorization.

Dated at City _____

State _____

on _____

| | |
|---|---|
| Signature of Proposed Insured or parent or guardian, if Proposed Insured is a Child, issue Ages 0-14 | |
| Signature of Owner or Applicant if not Proposed Insured (If corporation, print firm's name and signature of authorized officer.) (If trust, signature of trustee.) | |

**Financial Professional to complete this section:**

Will any existing insurance be replaced or changed (or has it been) assuming the insurance applied for will be issued?    ☐ Yes   ☐ No
(If "yes" give details.)

I certify that I have asked and recorded completely and accurately the answers to all questions on the fully completed application Part 1, and know of nothing affecting the risk that has not been recorded herein.

☐ I have witnessed the signature required on fully completed Part 1       ☐ I have not witnessed the signature required on fully completed Part 1, (Explain below)

Signature of Licensed Financial Professional/Insurance Broker
Print Licensed Financial Professional's Name   JERRY CROSS

AXIGIV-2005 PA                                                              4

10462032, 05-09-2007, 14:29:19

☐ AXA Equitable Life Insurance Company       ☐ MONY Life Insurance Company of America
      1290 Avenue of the Americas                         1290 Avenue of the Americas
          New York, NY 10104                                    New York, NY 10104



Optional
Benefits
Supplement
Form No. OPTIONAL
BENE-GV (2005)

**Optional Benefits Supplement Forming a Part of The Application for Insurance**
**REFER TO VUL SUPPLEMENT FOR RIDER SELECTION ON ANY VARIABLE LIFE PLAN.**

**Whole Life***
☐ Accidental Death Benefit
    Amount) $ _____
☐ Disability Premium Waiver
☐ Children's Term $ _____ Units ____
    (Complete Children's Term Supplement)
☐ Option to Purchase Add'l Ins.
    $ _____
☐ Paid-up Additions:
    (1) Single Premium $ _____
    (2) Recurring Premium $ _____
☐ Supplemental Insurance (SIR)
    $ _____
    Target Death Benefit $ _____
☐ Supplemental Protective Benefit
    (Complete Term Rider Supplement
    Information on Applicant)
☐ Yearly Renewable Term:
    (1) On Insured $ _____
    (2) On Add'l Insured $ _____
    (Complete Term Rider Supplement)
☐ Other _____

**Term Life**
☐ Disability Premium Waiver
☐ Children's Term $ _____ Units ____
    (Complete Children's Term Supplement)
☐ Other _____

**Survivorship Universal Life**
☐ Estate Protector (insert percentage)
    _____% (Maximum = 122%)
☐ Lapse Protection Rider (DB option A only)
☐ Cash Value Enhancement Rider
☐ Return of Premium Death Benefit Rider
☐ Other _____

**Universal Life**
☐ Disability Waiver of Monthly Deductions
☐ Children's Term $ _____ Units ____
    (Complete Children's Term Supplement)
☐ Option to Purchase Add'l Ins.
    $ _____
☐ Lapse Protection Rider (DB option A only)
☐ Cash Value Enhancement Rider
☐ Return of Premium Death Benefit Rider
☐ Other _____

**ISWL (MLQA)**
☐ Waiver of Premium
☐ Children's Term Rider
    (Complete Children's Term Supplement)
☐ Accidental Death and Dismemberment
☐ Purchase Option Rider
☐ Other Insured Term Rider (Complete
    Term Rider Supplement)
☐ Primary Insured Term Rider
☐ Other _____

**Whole Life Dividend Elections***
☐ Dividend Accumulation
☐ Dividend Additions
☐ Dividends to Reduce Premium
          ☐ Premiums, Balance to Additions
    Term Dividend — Provision:          or
          ☐ Cash
*Available only for inforce AXA Equitable Whole Life (EWL) contractual obligations with a face amount less than $50,000.

Signed at (City and State) _____ on _____ (Date)

Signature of Proposed Insured _____

Signature of Additional/Joint Insured (if to be insured)
_____

Signature of Owner (if other than Proposed Insured) who agrees to be bound by the representations and agreements in this and any other part of
the application:
_____

Signature of Licensed Financial Professional/Insurance Broker          Date

MAY. 29. 200/s 3:29PM    PORTAMEDIC    NO. 9508    P. 2

**Application Part 2 To:** ☒ AXA Equitable Life Insurance Company

☐ AXA Life and Annuity Company

Reason for submission of this form: ☐New Policy   ☐Policy Change   ☐Reinstatement

**PARAMEDICAL**

1. a. Proposed Insured (Please Print) — First Name / Middle Initial / Last Name

b. Height
c. Birth Date
d. ☒ Male ☐ Female
e. Weight

2. a. Name and address of personal physician (or medical facility used instead): *(if none, so state)*

Dr. Jack Nemez

b. Date and reason last consulted if within the last 3 years:

c. What treatment was given or recommended? *(if none, so state)*

3. (For all "Yes" answers to Questions 3-6, circle items that apply.) Has Proposed Insured ever had or been treated for:

| | Yes | No |
|---|---|---|
| a. Disease or disorder of eyes, ears, nose or throat? | | |
| b. Dizziness, fainting, convulsions, paralysis or stroke; psychiatric, psychological or emotional disturbance; mental or nervous disease or disorder? | | |
| c. Shortness of breath, blood spitting bronchitis, asthma, emphysema, tuberculosis and other chronic respiratory disease or disorder? | | |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disease or disorder of the heart or blood vessels? | | |
| e. Ulcer, hernia, colitis, intestinal bleeding, jaundice, hemorrhoids, or other disease or disorder of the stomach, intestines, liver or gallbladder? | | |
| f. Sugar, albumin, blood or pus in urine, stone or other disease or disorder of kidney or bladder? | | |
| g. Diabetes; cyst, tumor, or cancer; thyroid or glandular disorder; skin disease or disorder? | | |
| h. Neuritis, arthritis, gout, or disease or disorder of the muscles or bones, including the back, or joints? | | |
| i. Deformity, lameness or amputation? | | |
| j. Allergies; anemia; other blood or lymph disease or disorder? | | |
| k. Disorder of prostate, reproductive organs, breasts, menstruation or pregnancy? | | |
| l. Is Proposed Insured now under observation or taking treatment? | | |

4. Has Proposed Insured, within the last 10 years, been:
a. Diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)?
b. Treated by a member of the medical profession for AIDS or ARC?

5. Has Proposed Insured, within the last 10 years:
a. Used, except as legally prescribed by a physician, tranquilizers; barbiturates or other sedatives; marijuana, cocaine, hallucinogens or other narcotics; amphetamines or other stimulants or any other illegal or controlled substance?
b. Received counseling or treatment regarding the use of alcohol or drugs?

6. Has Proposed Insured's weight changed by more than 10 pounds in the last 6 months?
  Yes / No

7. Other than as stated in answers to Questions 2-6, has Proposed Insured, within the last 5 years:
a. Consulted or been examined or treated by any physician or practitioner?
b. Had any illness, injury, or surgery?
c. Had a patient in a hospital, clinic, sanatorium, or other medical facility?
d. Had electrocardiogram, X-ray, other diagnostic test?
e. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed?

8. a. Has Proposed Insured, within the last 12 months:
   (i) Smoked Cigarettes?
   (ii) Used any other form of tobacco?
   (Give full details)
b. Has Proposed Insured, within the last 5 years:
   (i) Smoked Cigarettes?
   (ii) Used any other form of tobacco?
   (Give full details)

| 10. Family History | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | | | |
| Mother | | | |
| Brothers/Sisters | | | |

DETAILS FOR "YES" ANSWERS: I. Include: i. Question Number. II. Diagnosis and Treatment. III. Results. iv. Dates and Duration. v. Names and Addresses of all attending physicians and medical facilities. (If additional space is needed, please attach a separate sheet, dated, signed and witnessed as below.)

The above statements and answers are true and complete to the best of my knowledge and belief.

Dated at _____ City _____ State

Witness (Must be Examined):

150-325D-PA    E5721_10    CAT. NO. 1999

(Ed. 10/00)

# TERM LIFE INSURANCE POLICY

**AXA Equitable Life Insurance Company**

**1290 Avenue of the Americas, New York, NY 10104**

This is a renewable term insurance policy. Coverage is renewable until the Final Term Expiry Date. Premiums are level for the first ten policy years and then generally increase annually in subsequent policy years. All premiums are guaranteed. Premiums are payable to the Final Term Expiry Date or until earlier death. There is a Conversion Privilege as described in the policy. This is a non-participating policy.

147-10PA